UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DAVID WAYNE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-279-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RANDY INGRAM, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

David Wayne Bailey is an inmate confined by the Kentucky Department of Corrections ("KDOC") at the Northpoint Training Center ("NTC") in Burgin, Kentucky. Proceeding without an attorney, Bailey has filed a Complaint alleging that the defendants, who are all NTC officials, violated his federal constitutional rights. [Record No. 1] He seeks relief under 42 U.S.C. § 1983. Bailey alleges that the defendants unlawfully terminated his position in the prison kitchen, retaliated against him for observing his religious beliefs, and wrongfully charged him with, and convicted him of, a prison disciplinary infraction.

The Court has granted several motions allowing Bailey to amend his Complaint to: clarify the official title of one defendant; assert new claims; and voluntarily dismiss claims against certain defendants. [*See* Record Nos. 5, 7, and 9.] In two motions pending before the Court, Bailey again seeks permission to amend his Complaint. He has tendered identical Amended Complaints with both motions. [*See* Record Nos. 10 and 11.] The Court will

grant Bailey's August 27, 2014 motion to amend his Complaint [Record No. 10], but will deny his September 8, 2014 motion [Record No. 11] because it is duplicative.

This matter is also pending for a preliminary review of Bailey's Complaint and Fourth Amended Complaint. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Because Bailey is not represented by an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). For the reasons outlined below, Bailey has failed to state a claim upon which relief can be granted. His Complaint, as amended, will be dismissed with prejudice. The Court will also deny Bailey's motion for injunctive relief. [Record No. 12]

## I.

Bailey previously held a position working in the NTC kitchen. Bailey states that: (i) he wanted to attend the "Resident's Encounter Christ's Retreat" ("RECR"), a religious event organized by the prison, which was scheduled for May 17, 2014; (ii) he received permission to attend the RECR more than a month before the event, contingent upon finding a replacement worker to perform his kitchen duties; and (iii) Defendant Randy Ingram, supervisor of the NTC food production managers, approved his arrangement for another inmate to cover his duties on the date of the RECR. On April 18, 2014, Bailey learned that the prison staff had scheduled him to work in the NTC kitchen on May 17, 2014, despite having received advance permission to attend the religious event. Bailey then filed a grievance regarding the scheduling conflict. [*See* Inmate Grievance Form, Record No. 1-1,

p. 2.]  The grievance was dismissed two days later, however, because it concerned a non-grievable matter under the KDOC's regulation, CPP 15.6.  [*Id.*]

On May 17, 2014, Defendant Kevin Bugg encountered Bailey in the NTC cafeteria and informed him that he needed to report to his assigned job in the kitchen.  [Record No. 1, p. 3, ¶ 5]  Bailey protested, stating that he would be attending the RECR, that his God came before his work, and that he had worked eight straight days so that he could attend the May 17, 2014.event   [*Id.*]   Bailey alleges that Bugg demanded that he "end his Religious Encounter" and report to his work.  [*Id.*]  Bailey also contends that Bugg instructed two watchmen to lock him up in the NTC Special Management Unit ("SMU") because he had disobeyed an order.  [*Id.*, pp. 3–4; Record No, 10-1, pp. 4–5]

Bailey was ultimately allowed to attend the RECR but, two days later, Bugg charged Bailey with "Refusing or Failing to Carry Out a Work Assignment" as a result of the incident.  [Record No. 1-1, pp. 8–9]  On May 20, 2014, Defendant David L. Mudd, Bugg's supervisor, reviewed and approved the disciplinary charge.  [*Id.*]  Defendant Teresa A. Esque investigated the charge and determined that it should proceed.  [*Id.*]  Bailey alleges that on June 2, 2014, Esque violated his First Amendment religious rights by informing him that his kitchen job "comes before any recreational event."  [*Id.*, p. 4, ¶ 7]  Following Bailey's request, the disciplinary charge was referred to the NTC Adjustment Committee for a formal hearing.  [*Id.*, pp. 8–9]

The formal hearing occurred on June 4, 2014, but Bailey claims that he was not present.  [Record No. 12, p. 2, ¶ 6]  Hearing Officer Jason W. Perkins found Bailey guilty of an amended charge of Disruptive Behavior.  [Record No. 1-1, pp. 10–11]  Bailey did not lose

good-time credits ("GTC") as a result of the disciplinary conviction. However, he was required to perform 20 hours of extra duty work as a consequence. [*Id*., § 3] Bailey immediately appealed his disciplinary conviction, but on June 9, 2014, NTC Warden Don Bottom rejected the appeal because Bailey had used the wrong form. [Record No. 12-1, pp. 2, 3] As a result, Bailey re-filed his appeal. On June 23, 2014, Warden Bottom concurred with Hearing Officer Perkins's findings and affirmed Bailey's conviction. [Record No. 1, p. 5]

Bailey reported to his kitchen job on May 20, 2014, assuming that Defendant Randy Ingram had interceded on his behalf regarding the events of May 17, 2014 and that his job was safe. [*Id*., p. 4, ¶ 6] He states that he learned on May 20, 2014, that he was in jeopardy of losing his job. [*Id*.] On June 30, 2014, Bailey was notified that he was facing possible dismissal from his prison job, because he "did not show up for a scheduled shift after being told that he had to come in" and that he was not to report to work pending a decision by the Classification Committee. [Record No. 1-1, p. 5] On July 1, 2014, the Classification Committee officially removed Bailey from his prison job. [*Id*.]

Bailey alleges that the named defendants violated his right to observe his religious beliefs guaranteed by the First Amendment of the United States Constitution, violated his right to due process of law guaranteed by the Fourteenth Amendment of the Constitution, and demonstrated deliberate indifference to his religious beliefs. Bailey seeks an order declaring the defendants' actions to be unconstitutional and he demands nominal and punitive damages from the defendants in their individual and official capacities. [Record No. 1, p. 6, ¶ 3]

On August 27, 2014, the Court granted Bailey's motion to amend his complaint to dismiss the § 1983 claims which he had recently asserted against Justin Yeast and Craig Hughes. [*See* Record No. 9] Bailey then filed two motions [Record Nos. 10 and 11] seeking permission to file the identical tendered Amended Complaint [Record Nos. 10-1 and 11-1], which is now the Fourth Amended Complaint. In that filing, Bailey reiterates the same facts and legal claims set out in his original Complaint, but provides more details about the events. Bailey alleges that the defendants violated both his federal constitutional rights and NTC policies and procedures, that Defendant Randy Ingram was deliberately indifferent to his right to observe his religious beliefs, and that Defendant Bugg's actions "constituted assault." [Record No. 10-1, p. 4, ¶ 3(A); p. 8, ¶ 2] Bailey again requested an order declaring that the defendants' actions violated his constitutional rights, an order expunging his "wrongful conviction," nominal and punitive damages, and a trial by jury. [*See id.*, p. 9, ¶ 2]

Finally, Bailey has filed a motion asking this Court to enter a preliminary injunction or temporary restraining order directing the defendants to protect the security of religious freedoms of NTC prisoners; allow NTC prisoners to attend special religious services; and prevent the defendants from requiring NTC prisoners "to do work that is contrary to their religious beliefs . . . or creating a custom that is arbitrary and cloaks retaliation(s)." [Record No. 12, p. 3] Bailey further alleges that on May 17, 2014, Inmate Hank House worked for him but received no compensation. [*Id.*, p. 2, ¶ 10] Although it is not clear from his motion, Bailey may also be seeking monetary relief on behalf of House.

## II.

### A. Official Capacity Claims

Bailey's claim for monetary damages from the named NTC defendants in their official capacities is barred by Eleventh Amendment immunity. Under the Eleventh Amendment to the United States Constitution,[1] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

The Commonwealth of Kentucky has not waived its immunity. *See Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004). Furthermore, Congress did not intend to override the traditional sovereign immunity of states by enacting § 1983. *Whittington v. Milby*, 928 F.2d 188, 193–94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 928 F.2d 404, at *2 (6th Cir. Mar. 19, 1991) (unpublished table opinion) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

The Eleventh Amendment also bars the damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official

---

1 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

capacity."); *McCrary v. Ohio Dep't of Human Servs.*, No. 99–3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity). Bailey's demand for nominal and punitive damages from the defendants in their official capacities will be dismissed for failure to state a claim upon which relief can be granted.

### B. Individual Capacity Claims

#### 1. Termination of Bailey's Prison Job

Bailey alleges that the defendants involved in the termination of his prison job[2] violated his right to due process of law guaranteed by the Fourteenth Amendment of the Constitution and his right to observe his religious beliefs guaranteed by the First Amendment of the Constitution. He seeks monetary damages from these defendants in their individual capacities. Bailey's Fourteenth Amendment due process claims lack merit because prisoners have no constitutionally-protected liberty or property interest in prison employment under the Fourteenth Amendment. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Jewell v. Leroux*, 20 F. App'x 375, 277 (6th Cir. 2001); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job."). Thus, under the Fourteenth Amendment, Bailey had no constitutionally protected interest in maintaining his prison job, and his removal for failure to report for work on May 17, 2014, does not entitle him to damages or other relief under § 1983.

---

2    These defendants are Randy Ingram, Kevin Bugg, and Lonitta Tomlinson.

Bailey next claims that his prison work schedule, which conflicted with the RECR and ultimately resulted in his termination from his prison job, infringed on his ability to observe and follow his religious beliefs guaranteed under the First Amendment of the Constitution. This claim also fails to state a claim upon which relief can be granted. Prison inmates do not lose their First Amendment right to exercise their religion because of incarceration. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate, and the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. *See O'Lone, 482 U.S. at 348*; *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). "The court must balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Walker*, 771 F.2d at 929.

Here, Bailey states that he is both a devout Catholic and a member of the Cherokee Nation of Oklahoma.[3] [Record No. 10-1, pp. 1–2] Bailey may have had strong desire to

---

3     In February 2011, Bailey filed a prior § 1983 action in this Court, alleging that prison officials who operated the now defunct Otter Creek Correctional Complex located in Wheelwright, Kentucky, had violated his First Amendment religious rights by refusing him permission to create and/or conduct a Native American Sweat Lodge. *See David Wayne Bailey v. Reverend Bobby Isaac, et al*, No. 7:11-CV-25-ART-HAI (E.D. Ky. 2011). In an Order entered in that action on December 2, 2011, the Court

attend the RECR, but he does not allege facts suggesting that his attendance at, or absence from, the RECR on May 17, 2014, would have prevented him from generally practicing and observing either his Catholic or Cherokee Nation religious beliefs. *O'Lone*, 482 U.S. at 351–52. Bailey does not allege, nor can he show, that he was deprived of all means of religious expression, or that he was even denied any particular religious practice. Instead, his claim centers on one particular group retreat, which he ultimately attended.

Bailey's attachments indicate that the prison kitchen was understaffed on the date of the RECR. In fact, Bailey admits that he knew "the [k]itchen to be short staffed on most every [o]ccasion because [m]anagement refused to pay [e]mployee(s) but rather compelled [e]mployee(s) to '[v]olunteer' to work for [n]aught." [Record No. 1, p. 4, ¶ 7] Thus, while Bailey complains that NTC prisoners are not paid for their work, or are not paid enough for their work, he clearly acknowledges that the NTC prison is consistently understaffed. The fact that the prison kitchen is understaffed and was understaffed on May 17, 2014, was a valid penological consideration which justified requiring Bailey to work on May 17, 2014.

Bailey further alleges that his removal from his prison job was in retaliation for the fact that he attended the RECR on May 17, 2014, but Bailey's First Amendment retaliation claim also lacks substantive merit. Again, prisoners retain First Amendment rights that are consistent with their status as a prisoner or with the legitimate penological objectives of the corrections system. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also*

---

described a Native American Sweat Lodge as "a 'purification ceremony' in which 'participants gather inside a small dome-shaped structure' to pour water over heated rocks." [Record No. 11, p. 2, therein (citing *McElhaney v. Elo*, 202 F.3d 269, at *1 n.1 (6th Cir. 2000))]

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (i) the plaintiff engaged in activities protected by the Constitution or statute; (ii) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) this adverse action was taken at least in part because of the exercise of the protected conduct. The plaintiff has the burden of proof regarding these elements. *See Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D. Mich. 2010).

Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If the plaintiff makes such a showing, the defendant has the burden of demonstrating that the same action would have been taken even absent the plaintiff's protected conduct. *Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 399.

Even broadly assuming that Bailey's attendance at the RECR on May 17, 2014 was religious activity protected by the First Amendment, the removal of a prisoner from his prison job has generally been held not to constitute "adverse action" under the retaliation analysis. *See Jewell*, 20 F. App'x at 377 (dismissal of prisoner from his job was not a constitutional violation and that prison officials did not retaliate against him when they transferred him to another prison after filing grievances). In *Davis v. Walton*, No. 1:12-CV-258, 2014 WL 320206 (W.D. Mich. Jan. 29, 2104), the district court explained that prisoner plaintiff's failure to receive the prison job of his choice was a routine inconvenience of

prison life that would not deter a person of ordinary person from engaging in protected conduct. *Id*. at *8. The court aptly explained the issue as follows:

> Prison employment is not employment in the ordinary sense, but represents a part of the rehabilitation program of the prison. The incidents described in this record are routine aspects of prison life. It trivializes the concept of First Amendment retaliation — which was fashioned by the Supreme Court and the Sixth Circuit to assure vindication of prisoner's free-speech rights — to allow dissatisfaction over a prison work detail to qualify as an adverse action sufficient to support a constitutional tort.

*Id*.; s*ee also Colvin v. Foy*, No. 1:13-CV-465, 2014 WL 1154658, at *3 (W.D. Mich. Mar 21, 2014) (denial of a prison job did not constitute adverse action because the denial did not deter the prisoner from engaging in the protected activity of filing grievances); *Cohron v. City of Louisville*, No. 3:06-CV-P570–C, 2010 WL 1049975, at *3 (W.D. Ky. March 19, 2010) (inmate's removal from the work list did not constitute an adverse action for purposes of a retaliation claim); *Neal v. Nomack*, No. 2:09-CV-12859, 2010 WL 3277863, at *4 (E.D. Mich. July 9, 2010) ("[E]ven if plaintiff's loss of his prison job because of the transfer impaired his ability to pursue his medical malpractice claim, such an adverse consequence does not implicate his constitutional right of access to the courts."); *Umani v. Caruso*, No. 2:07-CV-10649, 2008 WL 2216283, at *14 (E.D. Mich. May 27, 2008) (granting defendant's motion summary judgment regarding prisoner's retaliation claim based on the loss of his prison job, because "loss of a job would not deter a person of ordinary firmness from continuing to file grievances.").

Further, even assuming that the termination of Bailey's prison job did in fact constitute "adverse action" in the retaliation context, Bailey has not adequately alleged facts showing

that his attendance at the RECR was a substantial or motivating factor in the defendants' alleged retaliatory conduct.

Bailey was allowed to attend the RECR, so he was not deprived of the opportunity to observe his religious beliefs and participate in the RECR. Bailey knew a month before the RECR on May 17, 2014, that the prison had scheduled him to work that day, and although he objected to the work assignment at that time, he nevertheless chose to attend the RECR instead of reporting to work. The Disciplinary Report Form reveals that Bailey was terminated because he failed to report to work on May 17, 2014, that the kitchen was short on employees that day, that Kevin Bugg treated Bailey's refusal to report to his kitchen job as a failure to carry out a work assignment, which is tantamount to insubordination.[4] Given these facts, a non-retaliatory reason existed for terminating Bailey from his prison job. *See Colvin*, 2014 WL 1154658, at *3 (finding that the denial of the prisoner's job was based on a non-retaliatory purpose, which was the defendant prison official's decision to deny the prisoner a work assignment until he could demonstrate that six months could pass without him incurring a misconduct charge).

Under these facts, Bailey has not alleged a violation of his constitutional rights, under either the Fourteenth Amendment or the First Amendment of the Constitution, stemming from the termination of his prison job in the NTC kitchen. His claims for damages against these defendants in their individual capacities will be dismissed for failure to state a claim upon which relief can be granted.

---

4     As noted, the hearing officer reduced the charge to a lesser offense (i.e., disruptive behavior) and imposed a minor sanction consisting of 20 hours of extra duty work.

## 2. Bailey's Disciplinary Conviction

Bailey collaterally challenges his disciplinary proceeding which resulted in his conviction for disruptive conduct and the sanction of working 20 hours of extra duty. Bailey alleges that all of the defendants who were involved at various stages the disciplinary process violated his constitutional rights.[5] He demands monetary damages from these defendants, in their individual capacities, and an order declaring his disciplinary conviction invalid. Bailey's claims on this issue will be dismissed because they fail to state a claim upon which relief can be granted.

Ordinarily, a prisoner cannot seek damages under § 1983 unless and until he can demonstrate a favorable termination of his disciplinary conviction. In *Heck v. Humphrey*, the Supreme Court established the so-called "favorable termination rule." 512 U.S. 477 (1994). The Court explained that rule as follows:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id*. at 486–87.

---

5     These defendants were Defendant Kevin Bugg, who issued the disciplinary charge; Defendants David L. Mudd, Brandon Lynch, and Teresa A. Esque, who investigated the disciplinary charge and/or allowed it to proceed; Defendant Jason W. Perkins, the hearing officer who found Bailey guilty of disruptive conduct; and Warden Don Bottom, who eventually affirmed the disciplinary conviction and the sanction imposed.

The Supreme Court held that any claim for damages that, if successful, would "necessarily imply" the "invalidity of any outstanding criminal judgment against the plaintiff" is not cognizable under § 1983 unless the plaintiff demonstrates that judgment's prior invalidation. *Id*. at 487. This rule promotes the finality of and consistency in judicial resolutions by limiting opportunities for collateral attack and averting the "creation of two conflicting resolutions arising out of the same or identical transaction." *See id*. at 484–85.

The Supreme Court later extended the "favorable termination rule" to a prison disciplinary hearing resulting in the deprivation of good-time credits, where the prisoner's civil rights action alleging the denial of his due process rights would "necessarily imply" the invalidity of the deprivation of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). The Supreme Court has subsequently clarified that a prisoner is required to show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence is affected. *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004).

Here, Bailey, was not ordered to forfeit any GTC. The only sanction imposed was ordering him to perform 20 hours of "extra duty" work. Thus, the length of Bailey's sentence was not adversely impacted, which means that any challenge to his disciplinary conviction can succeed only if he can establish that he had a liberty interest in remaining free from working 20 hours of extra duty. To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).

It is well-established that the sanction of "extra duty" work does not amount to an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. *See Staffney v. Allen*, 187 F.3d 638, 1999 WL 617967 (6th Cir. Aug. 12, 1999) (affirming dismissal of a § 1983 claim based on a disciplinary conviction where the sanctions imposed consisted only of destruction of personal property, five days in "toplock," the loss of 14 days of privileges, and 120 days of "extra duty" work); *See also Smith v. DeBruyn*, Nos. 94-3286, 95-2090 and 95-2591, 1996 WL 407258, at *4 (7th Cir. Jul. 18, 1996) (finding that the "extra duty" sanction was less significant than a disciplinary sanction and did not implicate a liberty interest); *Pigott v. Corr. Corp. of Am.*, No. 07-2003, 2008 WL 3244001, at *3 (D. Minn. Aug. 06, 2008) (finding that extra work duty did not amount to an atypical and significant hardship); *Mayes v. Hickson*, No. H-03-4964, 2006 WL 3030671, at *2 (S.D. Tex. Oct. 23, 2006) ("[E]xtra work assignments . . . are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life."); *Samford v. Staples*, 249 F. App'x 1001, 1004 (5th Cir. 2007) (holding that disciplinary sanctions that included curtailed recreation and commissary privileges, assignment of extra duty, temporary solitary confinement, and a reduction in prisoner's classification status did not create an "atypical and significant hardship").

Bailey's broad allegation that the defendants violated various KDOC regulations during the disciplinary process also lacks merit. The requirements of procedural due process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin*, 515 U.S. at 485. Accordingly, an agency's alleged failure to adhere to its own guidelines does not state a due process claim. *Cleveland Bd. of Educ. v. Loudermill*,

470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004); *Slater v. Holland*, No. 11-CV-86-HRW, 2012 WL 1655985, at *5 (E.D. Ky. May 10, 2012). Thus, Bailey's allegations — that the NTC defendants who were involved at various levels of his disciplinary process violated his constitutional rights, that his resulting sanction of 20 hours of "extra duty" work violated his constitutional rights, and that he is entitled to monetary damages based upon his conviction and sanction — fail to state a claim upon which relief can be granted and will be dismissed with prejudice.

### C. Claim Asserted on Behalf of Inmate Hank House

Bailey seems to be asserting a claim for money damages, or at least unpaid wages, on behalf of Inmate Hank House. Bailey cannot assert this claim, because a prisoner may only pursue claims alleging the violations of his own constitutional rights, not the rights of other prisoners. *See Newsom*, 888 F.2d at 381; *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008). This claim will be dismissed because Bailey lacks standing to assert the constitutional rights of any other prisoner.

### D. Bailey's State Law Claim Alleging Assault

In his Fourth Amended Complaint, Bailey alleges that the actions of defendant Bugg "constituted assault." [Record No. 10-1, p. 8] Presumably, this claim stems from Bailey's assertion that Bugg ordered two other prison officials to place him in the SHU on May 17, 2014, for some unspecified period of time. A claim alleging assault is a state law claim, not one that arises under federal law. Because the Court has concluded that Bailey has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983, the Court declines to exercise jurisdiction over Bailey's state law claim of assault. *See United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 726 (1966); *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed.").

**E. Motion for a Temporary Restraining Order/Preliminary Injunction**

Bailey also injunctive relief which would broadly direct the defendants to protect the security of religious freedoms of NTC prisoners, allow NTC prisoners to attend special religious services, and prevent the defendants from requiring NTC prisoners "to do work that is contrary to their religious beliefs . . . . or creating a custom that is arbitrary and cloaks retaliation(s)." [Record No. 12, p. 3]. In determining whether to grant such relief, the Court considers: (i) the plaintiff's likelihood of success on the merits; (ii) whether the injunction will prevent or lessen irreparable injury; (iii) whether injunctive relief would cause substantial harm to others; and (iv) whether the public interest would be served by the issuance of injunctive relief. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). While none of these four factors generally is given controlling weight, a preliminary injunction may not issue where no likelihood of success exists on the merits. *See Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

Here, injunctive relief is not warranted. For the reasons set forth above, Bailey has failed to state a claim upon which relief can be granted under either the First or Fourteenth Amendments of the Constitution, which means that he has not alleged facts showing that he will suffer irreparable harm absent injunctive relief. Injunctive relief is intended to preserve the *status quo* until a trial on the merits can be held. That purpose would not be served by

the issuance of injunctive relief in this case. *See Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991). Bailey's constitutional claims lack substantive merit. Thus, there is no basis for any type of injunctive relief.

### III.

Because Bailey has failed to state a claim upon which relief can be granted, his Complaints, as amended, will be dismissed with prejudice and judgment will be entered in favor of the defendants. Accordingly, it is hereby

**ORDERED** as follows:

1. Bailey's August 27, 2014 motion to amend his Complaint [Record No. 10] is **GRANTED**. Bailey's September 8, 2014 motion to amend his Complaint [Record No. 11] is **DENIED** as **DUPLICATIVE** of Record No. 10.

2. The Clerk of the Court shall docket Bailey's tendered Amended Complaint [Record No. 10-1] as Bailey's Fourth Amended Complaint.

3. Bailey's Complaint [Record No. 1, as amended at Record Nos. 5, 7, and 9], and his Fourth Amended Complaint [Record No. 10-1] are **DISMISSED WITH PREJUDICE**.

4. Bailey's motion seeking a temporary restraining order and/or a preliminary injunction [Record No. 12] is **DENIED**.

5. Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This 24th day of October, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge